Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 30, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:22-CR-54-RMP |
| Plaintiff, | Plea Agreement |
| v. | |
| THEODORE JOSEPH SEYMOUR, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Richard R. Barker, Assistant United States Attorney for the Eastern District of Washington, and THEODORE JOSEPH SEYMOUR ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Lorinda Youngcourt, agree to the following Plea Agreement.

1.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on May 3, 2022, which charges Defendant with Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1153, a Class C felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of up to ten years;

b.    a term of supervised release of up to 10 years;

PLEA AGREEMENT - 1

c.    a fine of up to $250,000;

d.    restitution; and

e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense(s) of conviction.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

PLEA AGREEMENT - 3

1      a.    the right to a jury trial;

2      b.    the right to see, hear and question the witnesses;

3      c.    the right to remain silent at trial;

4      d.    the right to testify at trial; and

5      e.    the right to compel witnesses to testify.

6      While Defendant is waiving certain constitutional rights, Defendant understands

7    that Defendant retains the right to be assisted by an attorney through the sentencing

8    proceedings in this case and any direct appeal of Defendant's conviction and sentence,

9    and that an attorney will be appointed at no cost if Defendant cannot afford to hire an

10   attorney.

11     Defendant understands and agrees that any defense motions currently pending

12   before the Court are mooted by this Plea Agreement, and Defendant expressly waives

13   Defendant's right to bring any additional pretrial motions.

14     6.    Elements of the Offense

15     The United States and Defendant agree that in order to convict Defendant of

16   Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§

17   113(a)(3), 1153, the United States would have to prove the following beyond a

18   reasonable doubt.

19     a.    *First*, on or about September 11, 2021,  in the Eastern District of

20           Washington, Defendant assaulted E.J. by intentionally using a

21           display of force that reasonably caused E.J. to fear immediate

22           bodily harm;

23     b.    *Second*, Defendant acted with the intent to do bodily harm to E.J.;

24     c.    *Third*, Defendant used a dangerous weapon;

25     d.    *Fourth*, the assault took place within the exterior boundaries of the

26           Colville Indian Reservation, in Indian country;

27     e.    *Fifth*, Defendant is an Indian and an enrolled member of the

28           Confederated Tribes of the Colville Reservation; and

PLEA AGREEMENT - 4

f.  *Sixth*, the Confederated Tribes of the Colville Reservation is a federally-recognized tribe.

7.  Factual Basis and Statement of Facts

On November 23, 2021, SEYMOUR, an enrolled member of the Colville Tribe fired a long-barreled firearm into the air in close proximity to E.J.  The incident was captured on video, which depicts SEYMOUR demanding property from E.J. while pointing the firearm at E.J., who was inside a car.  Individuals off camera are heard yelling, "Stop, Theo," which is short for THEODORE. Notwithstanding these pleas, SEYMOUR yelled "Give me your shit" before firing the weapon in the air. SEYMOUR ultimately did not take any property from E.J., who was able to drive away from the scene. The assault occurred near Inchelium, Washington and within the external boundaries of the Confederated Tribes of the Colville Reservation.

8.  The United States' Agreement

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Count 2 of the Indictment filed on May 3, 2022, which charges Defendant with Attempt Robbery in Indian Country.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.  United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. Defendant and the United States agree to the following Guidelines calculations.

PLEA AGREEMENT - 5

a.    <u>Base Offense Level</u>

The United States and the Defendant agree that the base offense level for Assault with a Dangerous Weapon in Indian Country is 14.  *See* U.S.S.G. §2A2.2(a).

b.    <u>Special Offense Characteristics</u>

The United States and the Defendant agree that Defendant's base offense level is increased by 5 levels because a firearm was discharged.  U.S.S.G. § 2A2.2(b)(2)(A).

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the assault was motivated by a payment or offer of money or other thing of value. *See* U.S.S.G. § 2A2.2(b)(5).

c.    <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

      i.    accepts this Plea Agreement;

      ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

      iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

      iv.    provides complete and accurate information during the sentencing process; and

      v.    does not commit any obstructive conduct.

Defendant and the United States agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    <u>No Other Agreements</u>

PLEA AGREEMENT - 6

1    The United States and Defendant have no other agreements regarding the

2    Guidelines or the application of any Guidelines enhancements, departures, or

3    variances.  Defendant understands and acknowledges that the United States is free to

4    make any sentencing arguments it sees fit, including arguments arising from

5    Defendant's uncharged conduct, conduct set forth in charges that will be dismissed

6    pursuant to this Agreement, and Defendant's relevant conduct.

7              e.    Criminal History

8        The United States and Defendant have no agreement and make no

9    representations about Defendant's criminal history category, which will be determined

10   by the Court after the United States Probation Office prepares and discloses a

11   Presentence Investigative Report.

12       10.   Incarceration

13       The United States agrees to recommend a sentence within the advisory

14   Sentencing Guidelines as determined by the Court.

15       Defendant may recommend any legal sentence.

16       11.   Supervised Release

17       The United States and Defendant each agree to recommend 3 years of

18   supervised release.  Defendant agrees that the Court's decision regarding the

19   conditions of Defendant's Supervised Release is final and non-appealable; that is,

20   even if Defendant is unhappy with the conditions of Supervised Release ordered by

21   the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea,

22   withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or

23   any term of Supervised Release.

24       The United States and Defendant agree to recommend that in addition to the

25   standard conditions of supervised release imposed in all cases in this District, the

26   Court should also impose the following conditions:

27              a.    The United States Probation Officer may conduct, upon reasonable

28                    suspicion, and with or without notice, a search of Defendant's

PLEA AGREEMENT - 7

person, residences, offices, vehicles, belongings, and areas under
Defendant's exclusive or joint control.

b.    Defendant shall participate and complete such drug testing and
drug treatment programs as the Probation Officer directs.

c.    Defendant shall complete mental health evaluations and treatment,
including taking medications prescribed by the treatment provider.
Defendant shall allow reciprocal release of information between
the Probation Officer and the treatment provider.  Defendant shall
contribute to the cost of treatment according to the Defendant's
ability.

12.   <u>Criminal Fine</u>

The United States and Defendant agree to recommend that the Court not impose
any fine in this case.

13.   <u>Judicial Forfeiture</u>

Defendant agrees to voluntarily forfeit and relinquish to the United States all
right, title and interest in all assets listed herein, and hereby agrees to execute any and
all forms and pleadings necessary to effectuate such forfeiture of assets, including any
firearms and ammunition involved or used in the commission of the offense.

Defendant stipulates that Defendant is the sole owner of the assets listed above
and that no one else has an interest in these assets.

Defendant acknowledges that the assets listed above, which Defendant is
agreeing to forfeit, are subject to forfeiture as property used or intended to be used in
any manner or part to commit or to facilitate the commission of the offense to which
Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear
title to these assets to the United States, and to testify truthfully in any forfeiture
proceeding.

PLEA AGREEMENT - 8

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement.

Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets.

Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

14.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15.    Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.    Restitution Amount and Interest

PLEA AGREEMENT - 9

1    The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C.
2    §§ 3663, 3663A and 3664, the Court should order restitution in an amount to be
3    determined at or before sentencing, and that any interest on this restitution amount, if
4    any, should be waived.

5        b. <u>Payments</u>

6      To the extent restitution is ordered, the United States and Defendant agree that
7    the Court will set a restitution payment schedule based on Defendant's financial
8    circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay
9    not less than 10% of Defendant's net monthly income towards restitution.

10        c. <u>Treasury Offset Program and Collection</u>

11      Defendant understands the Treasury Offset Program ("TOP") collects
12    delinquent debts owed to federal agencies. If applicable, the TOP may take part or all
13    of Defendant's federal tax refund, federal retirement benefits, or other federal benefits
14    and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d);
15    31 U.S.C. § 3720A; 31 U.S.C. § 3716.

16      Defendant understands that the United States may, notwithstanding the Court-
17    imposed payment schedule, pursue other avenues to ensure the restitution obligation is
18    satisfied, including, but not limited to, garnishment of available funds, wages, or
19    assets. 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall
20    be construed to limit Defendant's ability to assert any specifically identified
21    exemptions as provided by law, except as set forth in this Plea Agreement. Until a
22    fine or restitution order is paid in full, Defendant agrees fully to disclose all assets in
23    which Defendant has any interest or over which Defendant exercises control, directly
24    or indirectly, including those held by a spouse, nominee or third party. Until such
25    time as the fine or restitution order is paid in full, Defendant agrees to provide
26    waivers, consents, or releases requested by the U.S. Attorney's Office to access
27    records to verify the financial information.

28        d. <u>Notifications and Waivers</u>

PLEA AGREEMENT - 10

1    Defendant agrees to notify the Court and the United States of any material
2    change in Defendant's economic circumstances (e.g., inheritances, monetary gifts,
3    changed employment, or income increases) that might affect Defendant's ability to
4    pay restitution. 18 U.S.C. § 3664(k). Defendant agrees to notify the United States of
5    any address change within 30 days of that change. *See* 18 U.S.C. § 3612(b)(1)(F).
6    These obligations ceases when Defendant's restitution is paid-in-full.

7    Defendant acknowledges that the Court's decision regarding restitution is final
8    and non-appealable; that is, even if Defendant is unhappy with the amount of
9    restitution ordered by the Court, that will not be a basis for Defendant to withdraw
10    Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's
11    conviction, sentence, or restitution order.

12    16.    Payments While Incarcerated
13    If Defendant lacks the financial resources to pay the monetary obligations
14    imposed by the Court, Defendant agrees to earn money toward these obligations by
15    participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16    17.    Additional Violations of Law Can Void Plea Agreement
17    The United States and Defendant agree that the United States may, at its option
18    and upon written notice to the Defendant, withdraw from this Plea Agreement or
19    modify its sentencing recommendation if, prior to the imposition of sentence,
20    Defendant is charged with or convicted of any criminal offense or tests positive for
21    any controlled substance.

22    18.    Waiver of Appeal Rights
23    Defendant understands that Defendant has a limited right to appeal or challenge
24    Defendant's conviction and the sentence imposed by the Court.

25    Defendant expressly waives all of Defendant's rights to appeal Defendant's
26    conviction and the sentence the Court imposes.

27    Defendant expressly waives Defendant's right to appeal any fine, term of
28    supervised release, or restitution order imposed by the Court.

PLEA AGREEMENT - 11

1    Defendant expressly waives the right to file any post-conviction motion
2 attacking Defendant's conviction and sentence, including a motion pursuant to 28
3 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from
4 information not now known by Defendant and which, in the exercise of due diligence,
5 Defendant could not know by the time the Court imposes sentence.

6    Nothing in this Plea Agreement shall preclude the United States from opposing
7 any post-conviction motion for a reduction of sentence or other attack upon the
8 conviction or sentence, including, but not limited to, writ of habeas corpus
9 proceedings brought pursuant to 28 U.S.C. § 2255.

10    19.    <u>Compassionate Release</u>

11    In consideration for the benefits Defendant is receiving under the terms of this
12 Plea Agreement, Defendant expressly waives Defendant's right to bring any motion
13 for Compassionate Release other than a motion arising from one of the specific bases
14 set forth in this paragraph of this Plea Agreement. The United States retains the right
15 to oppose, on any basis, any motion Defendant files for Compassionate Release.

16    The only bases on which Defendant may file a motion for Compassionate
17 Release in the Eastern District of Washington are the following:

18         b.    Medical Condition of Defendant.

19              i.    Defendant is suffering from a terminal illness (i.e., a serious
20                   and advanced illness with an end of life trajectory). A
21                   specific prognosis of life expectancy (i.e., a probability of
22                   death within a specific time period) is not required.
23                   Examples include metastatic solid-tumor cancer,
24                   amyotrophic lateral sclerosis (ALS), end-stage organ
25                   disease, and advanced dementia; or

26              ii.   Defendant is suffering from a serious physical or medical
27                   condition, a serious functional or cognitive impairment, or
28                   deteriorating physical or mental health because of the aging

PLEA AGREEMENT - 12

1        process that substantially diminishes the ability of the

2        defendant to provide self-care within the environment of a

3        correctional facility and from which Defendant is not

4        expected to recover.

  c.  Age of Defendant.

    i.  Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii.  Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

  d.  Family Circumstances.

    i.  The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii.  Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

  e.  Subsequent Reduction to Mandatory Sentence.

    i.  Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii.  after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

PLEA AGREEMENT - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    iii.  the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

   f.  Ineffective Assistance of Counsel.

    i.  Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

      1.  did not know at the time of Defendant's guilty plea, and

      2.  could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

20. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

   a.  this Plea Agreement shall become null and void;

   b.  the United States may prosecute Defendant on all available charges;

   c.  The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

   d.  the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a

PLEA AGREEMENT - 14

1  count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including

2  any claim that the United States has violated Double Jeopardy.

3       Defendant agrees not to raise any objections based on the passage of time,

4  including but not limited to, alleged violations of any statutes of limitation or any

5  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

6  Amendment.

7       21.    Integration Clause

8       The United States and Defendant acknowledge that this document constitutes

9  the entire Plea Agreement between the United States and Defendant, and no other

10  promises, agreements, or conditions exist between the United States and Defendant

11  concerning the resolution of the case.  This Plea Agreement is binding only on the

12  United States Attorney's Office for the Eastern District of Washington, and cannot

13  bind other federal, state, or local authorities.  The United States and Defendant agree

14  that this Agreement cannot be modified except in a writing that is signed by the

15  United States and Defendant.

16                        Approvals and Signatures

17       Agreed and submitted on behalf of the United States Attorney's Office for the

18  Eastern District of Washington.

19  Vanessa R. Waldref

20  United States Attorney

21  _____                8/22/22
                                             _____
22  Richard R. Barker                         Date

   Assistant United States Attorney

23

24       I have read this Plea Agreement and I have carefully reviewed and discussed

25  every part of this Plea Agreement with my attorney.  I understand the terms of this

   Plea Agreement.  I enter into this Plea Agreement knowingly, intelligently, and

26  voluntarily.  I have consulted with my attorney about my rights, I understand those

27  rights, and I am satisfied with the representation of my attorney in this case.  No other

28

PLEA AGREEMENT - 15

1 | promises or inducements have been made to me, other than those contained in this
2 | Plea Agreement. No one has threatened or forced me in any way to enter into this
3 | Plea Agreement. I agree to plead guilty because I am guilty.
4 |
5 | _____        8-11-22
6 | THEODORE JOSEPH SEYMOUR              Date
   | Defendant
7 |
8 |         I have read the Plea Agreement and have discussed the contents of the
9 | agreement with my client. The Plea Agreement accurately and completely sets forth
10 | the entirety of the agreement between the parties. I concur in my client's decision to
11 | plead guilty as set forth in the Plea Agreement. There is no legal reason why the
   | Court should not accept Defendant's guilty plea.
12 | _____        8/15/2022
13 | Lorinda Youngcourt                    Date
14 | Attorney for Defendant
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

PLEA AGREEMENT - 16